UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAURA Z.,

               Plaintiff,

      v.                                           **DECISION AND ORDER**
                                                                   21-CV-918S

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

      1.      Plaintiff Laura Z.[1] challenges the determination of an Administrative Law Judge ("ALJ") that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since April 1, 2018, due to mental and physical impairments. Plaintiff maintains that she is entitled to benefits because her impairments render her unable to work.

      2.      Plaintiff filed applications for disability benefits and supplemental security income in April 2019. After denial at the agency level, Plaintiff proceeded to a telephonic hearing before ALJ Joani Sedaca on December 9, 2020. At the time of the hearing, Plaintiff was 36 years old, with at least a high school education, and had no past relevant work. The ALJ considered the case *de novo* and, on January 26, 2021, issued a written decision denying Plaintiff's applications for benefits. The Appeals Council thereafter denied Plaintiff's request for review on July 12, 2021.

---

[1] In accordance with this district's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order identifies the plaintiff by first name and last initial only.

1

3. Plaintiff filed the current action on August 12, 2021, challenging the Commissioner's final decision.[2] After filing of the administrative record, the parties cross-moved for judgment on the pleadings under Rule 12 (c) of the Federal Rules of Civil Procedure, with briefing concluded on April 18, 2022. (Docket Nos. 6-9.) The Clerk of Court assigned the case here on October 4, 2022, at which time this Court took the motions under advisement without oral argument. (Docket No. 10.) For the following reasons, Plaintiff's motion will be denied, and Defendant's motion will be granted.

4. A party is entitled to judgment on the pleadings under Rule 12 (c) "only if it has established that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted). In social security appeals, the district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing a decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. §§ 405 (g), 1383 (c)(3).

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405 (g), 1383 (c)(3); Wagner v. Sec'y of Health & Hum. Servs., 906 F.2d 856, 860 (2d Cir. 1990). Instead, the court's inquiry is limited to two issues: (1) whether the Commissioner applied the correct legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. See Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see also Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal standards; only then

---

[2] The ALJ's January 26, 2021 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

does it determine whether the Commissioner's conclusions were supported by substantial evidence."). In conducting this inquiry, the court cannot substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Hum. Servs., 733 F.2d 1037, 1041 (2d Cir. 1984). Consequently, if the Commissioner's determination is free from legal error and supported by substantial evidence, the court must affirm. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).

      6.     As it relates to the legal-error inquiry, the court must determine whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotations and citations omitted). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (citation omitted). This inquiry is completed first because "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

7. As it relates to the substantial-evidence inquiry, the standard is not high. See Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). The United States Supreme Court defines substantial evidence as only "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and has clarified that "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154 (quoting Consol. Edison Co. v. NLRB, 305 U.S 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). Because the Commissioner's factual findings are conclusive if supported by substantial evidence, see 42 U.S.C. §§ 405 (g), 1383 (c)(3), review is properly focused on whether substantial evidence supports the Commissioner's determination, not whether substantial evidence might also support the plaintiff's position. See Zacharopoulos v. Saul, 516 F. Supp. 3d 211, 220 (E.D.N.Y. 2021) (noting that "the relevant question is not whether substantial evidence supports plaintiff's position, but whether 'substantial evidence supports *the ALJ's decision*'") (quoting Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original)). This is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (citing Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999)).

8. "To determine on appeal whether [the Commissioner's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial

4

evidence, the Commissioner's factual findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). Similarly, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). In short, the substantial-evidence standard requires that once an ALJ finds facts, those facts can be rejected "'only if a reasonable factfinder would *have to conclude otherwise*.'" Brault, 683 F.3d at 448 (quoting Warren v. Shalala, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)).

9. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

10. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider her disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to

5

> perform her past work.  Finally, if the claimant is unable to perform her past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. §§ 404.1520, 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

11. The claimant has the burden of proof on the first four steps; the Commissioner has the burden of proof on the fifth step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The fifth step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. §§ 423 (d)(2)(A), 1383 (c)(1)(A); 20 C.F.R. §§ 404.1520 (f), 416.920 (a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

12. In this case, the ALJ found the following with regard to the five-step process set forth above: (1) Plaintiff had not engaged in substantial gainful activity since April 1, 2018, the alleged onset date (R. at 17); (2) Plaintiff's post-traumatic osteoarthritis in the right ankle and foot, major depressive disorder, generalized anxiety behavior, and alcohol-use disorder were severe impairments within the meaning of the Act (R. at 17-18); (3) Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 18-19); (4) Plaintiff retained the residual functional capacity ("RFC") to

perform sedentary work, with certain limitations[3] (R. at 19-23); (5) Plaintiff had no past relevant work (R. at 23); and (6) Plaintiff could perform jobs that exist in significant number in the national economy (R. at 24).  Accordingly, the ALJ determined that Plaintiff was not under a disability as defined by the Act from April 1, 2018, through January 26, 2021.  (R. at 16, 24.)

13.   Plaintiff challenges the ALJ's decision on the basis that she failed to properly consider the opinion of consultative examiner Janine Ippolito, Psy.D., and failed to properly determine her mental RFC.  In response, the Commissioner argues that the ALJ's decision is free from legal error and supported by substantial evidence and should therefore be affirmed.  This Court agrees with the Commissioner.

14.   Under the regulations applicable to claims filed on or after March 27, 2017, such as this one, the Commissioner no longer defers to medical opinions[4] nor gives them

---

[3] The limitations include the following: "can occasionally climb, stoop, crouch and balance; no kneeling or crawling; simple, routine and repetitive tasks; occasional decision-making and changes in work-setting, including procedures and tools; no public contact; and occasional contact with coworkers, including supervisors." (R. at 19-23.)

[4] Under the revised regulations, a "medical opinion" is defined as follows:

> Medical opinion.  A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> (i)  Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
> (ii)  Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
> (iii)  Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

any specific evidentiary weight. See 20 C.F.R. §§ 404.1520c (a), 416.920c (a). Instead, the Commissioner assesses the persuasiveness of medical opinions according to five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, including familiarity with other evidence in the claim or an understanding of the agency's policies and evidentiary requirements. See 20 C.F.R. §§ 404.1520c (c)(1)-(5), 416.920c (c)(1)-(5).

15. "The ALJ must articulate his [or her] consideration of the medical opinion evidence, including how persuasive he [or she] finds the medical opinions in the case record." See Jacqueline L. v. Comm'r of Soc. Sec., 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021). But the ALJ is generally required to articulate and explain only the consideration of the supportability and consistency factors, not the others. See 20 C.F.R. § 404.1520c (b)(2). Nonetheless, if the ALJ finds that two or more medical opinions on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must articulate the consideration of the other most persuasive factors. See 20 C.F.R. § 404.1520c (b)(3).

16. In articulating his or her consideration of medical opinion evidence, the ALJ must do so in a way that is reviewable. While the analysis need not necessarily include the words "supportability" and "consistency," it must be discernable that the ALJ properly applied the regulations and considered both factors in weighing the medical opinions of record. See Kathleen K. v. Comm'r of Soc. Sec., 20-CV-1160-EAW, 2022 WL 999686, at *4 (W.D.N.Y. Apr. 4, 2022) (citing cases); see also, Warren I. v. Comm'r of Soc. Sec.,

---

(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. §§ 404.1513 (a)(2); 416.913 (a)(2).

8

No. 5:20-CV-495 (ATB), 2021 WL 860506, at *6 (N.D.N.Y. Mar. 8, 2021) ("Regardless of any allusion to the old regulations, an evaluation of the medical opinion evidence which sufficiently comports with the essence of the new regulations, and in particular sets forth a sufficient explanation of the ALJ's consideration of the supportability and consistency factors, should withstand judicial scrutiny."). In this regard, "[a]t their most basic, the amended regulations require that the ALJ explain [his or her] findings regarding the supportability and consistency for each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'" Raymond M. v. Comm'r of Soc. Sec., No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) (citation omitted).

      17.    Here, consultative examiner Janine Ippolito, Psy.D., examined Plaintiff on October 8, 2019. (R. at 391-395.) As a result of that examination, Dr. Ippolito opined that Plaintiff had mild limitations in understanding, remembering, or applying complex directions and instructions; sustaining concentration and performing a task at a consistent pace; and demonstrating awareness of normal hazards and taking appropriate precautions. (R. at 394.) She further found that Plaintiff had moderate limitations in interacting adequately with supervisors, coworkers, and the public; and regulating emotions, controlling behavior, and maintaining well-being. (R. at 394.) Dr. Ippolito concluded that "[t]he results of the present evaluation appear to be consistent with psychiatric and substance abuse problems, but in itself this does not appear to be significant enough to interfere with the [Plaintiff's] ability to function on a daily basis." (R. at 394.)

18.     The ALJ considered Dr. Ippolito's opinion and found it "somewhat persuasive." (R. at 23.) In explaining her assessment, the ALJ stated that Dr. Ippolito's opinion was (1) based on a one-time consultative examination, (2) not supported by the medical record because Plaintiff had discontinued mental-health treatment, and (3) not supported by the medical record because even when Plaintiff re-engaged with mental-health treatment in September 2020, she failed to consistently attend and comply with the treatment. (R. at 23.) Nonetheless, the ALJ credited Dr. Ippolito's opinion to a certain degree in affording Plaintiff the benefit of the doubt and limiting her to simple, low-stress work. (R. at 23.)

19.     In this Court's view, the ALJ's consideration of Dr. Ippolito's opinion sufficiently comports with the governing regulations. The ALJ assessed Dr. Ippolito's relationship with Plaintiff and weighed the supportability and consistency of Dr. Ippolito's opinions against the record evidence. Contrary to Plaintiff's argument that the ALJ should have engaged in a more robust explanation of how she considered Dr. Ippolito's opinions, the ALJ's discussion reflects that she properly applied the regulations as she considered the relevant factors in weighing the opinion evidence and cited specific evidence in the record supporting her assessment. See Kathleen K., 2022 WL 999686, at *4; Raymond M., 2021 WL 706645, at *8. And while Plaintiff cites evidence in the record that in her view may support a more persuasive reading of Dr. Ippolito's opinion, the issue on review is whether the ALJ's determinations are supported by substantial evidence, not whether substantial evidence might also support a plaintiff's position. See Zacharopoulos, 516 F. Supp. 3d at 220.

20. Plaintiff further faults the ALJ for failing to include—and for failing to explain why she did not include—limitations in the RFC specifically corresponding to Dr. Ippolito's opinion that she was moderately limited in interacting adequately with supervisors, coworkers, and the public, and regulating emotions, controlling behavior, and maintaining well-being. (R. at 394.) Having thoroughly reviewed the record, this Court finds no error.

21. RFC is "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2). To properly determine RFC, the ALJ must assess all relevant medical and other evidence in the record. See 20 C.F.R. §§ 404.1545 (a)(1), 416.945 (a)(1). Such evidence includes, *inter alia*, objective medical evidence, medical opinions, medical history, clinical findings, and the claimant's own assessment of limitations. 20 C.F.R. §§ 404.1513 (a)(1)-(5), 416.913 (a)(1)-(5); see also Josua S. v. Comm'r of Soc. Sec., 6:19-CV-1434 (ML), 2021 WL 105769, at *4 (N.D.N.Y. Jan. 11, 2021) ("In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.") (collecting cases). While the ALJ is precluded from substituting his or her own opinion for competent medical evidence, the ALJ is nonetheless entitled to weigh all of the evidence, resolve conflicts within it, and reach an RFC that is consistent with the record as a whole. See Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013); Quinn v. Colvin, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016). In explaining RFC findings, an ALJ is not required to "reconcile explicitly every conflicting shred of medical testimony," Dioguardi v. Comm'r of Soc. Sec., 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (citation omitted), and is not precluded from crediting only portions of a medical opinion, see

Younes v. Colvin, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015), but must explain why a medical opinion was not adopted if the RFC assessment conflicts with it, see Dioguardi, 445 F. Supp. 2d at 297.  Finally, the ALJ's RFC determination need neither track nor correspond perfectly with any single medical opinion. See Rosa, 168 F.3d at 79.

22.   In this Court's view, the RFC determination does not materially conflict with Dr. Ippolito's opinion, even if that opinion is fully credited.  First, there is no requirement that the RFC limitations exactly match those articulated in a medical opinion.  See id. Second, the ALJ's determination that Plaintiff could perform low-stress, unskilled work involving simple, routine, and repetitive tasks with only occasional decision-making is not inconsistent with Dr. Ippolito's assessment.  See Mayer v. Comm'r of Soc. Sec., 18-CV-62 (WBC), 2019 WL 2266795, at *5 (W.D.N.Y. May 28, 2019) ("The Second Circuit has repeatedly held that "moderate" limitations do not preclude a plaintiff's ability to perform unskilled work.") (collecting cases).  Third, the limitation to unskilled work accommodates any moderate limitations in interacting adequately with others and regulating one's emotions, behavior, and well-being, since unskilled work "ordinarily involve[s] dealing primarily with objects, rather than with data or people," SSR 85-15, 1985 WL 56857, and requires only basic communication—"[t]he ability to hear and understand simple oral instructions or to communicate simple information is sufficient," SSR 96-9p, 1996 WL 374185.  See also, Rice v. Comm'r of Soc. Sec., 18-CV-1369, 2020 WL 4283894, at *4 (W.D.N.Y. July 27, 2020) (finding that moderate-to-marked limitations in adequately relating with others and in moderating emotions and controlling behavior did not preclude an RFC for simple work).  Fourth, the available jobs identified by the vocational expert do

not involve significant social interaction. (R. at 24 (identifying document preparer, cutter and paster, and addresser).) And finally, Plaintiff has pointed to no evidence in the record establishing that her ability to work is more restricted than the ALJ found.

23. Accordingly, having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds that it is free from legal error and supported by substantial evidence. It is therefore affirmed. See Grey, 721 F.2d at 46; Marcus, 615 F.2d at 27. Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   March 16, 2023
         Buffalo, New York

                                            s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            United States District Judge